**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMARA ANTHONY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 09-3918** |
| | : | |
| **DUFF & PHELPS CORPORATION,** | : | |
| **Defendant.** | : | |

<u>**Diamond, J.**</u>                                                                                            <u>**August 12, 2010**</u>

<u>**Memorandum**</u>

    Proceeding under federal and state law, Tamara Anthony alleges that banking firm Duff & Phelps fired her in June 2008 because of her Russian national origin. Because she offers no supporting evidence, I will grant the Company's Motion for Summary Judgment.


**I.      JURISDICTION**

    Plaintiff Tamara Anthony brings this action against Defendant Duff & Phelps, LLC pursuant to Title VII and the Pennsylvania Human Relations Act. 42 U.S.C. §§ 2000(e) *et seq*; 42 Pa. Stat. §§ 951-963. I have jurisdiction to hear Plaintiff's federal claim under 28 U.S.C. §1331 and supplemental jurisdiction to hear Plaintiff's state law claim under 28 U.S.C. §1367.


**II.      SUMMARY JUDGMENT STANDARDS**

    The "underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." <u>Walden v. Saint Gobain Corp.</u>, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (*citing* <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976)).

The requirements for granting summary judgment are well known:

> Upon motion of any party, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after viewing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The opposing party must support each essential element with concrete evidence in the record. See Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III. HISTORY

I have construed the undisputed facts in the light most favorable to Plaintiff, and made all reasonable inferences and resolved all material factual disputes in her favor. When Plaintiff seeks to contradict Defendant's factual contentions but offers no supporting evidence, I have treated these contentions as undisputed. See Blaylock v. City of Phila., 504 F.3d 405, 413 (3d Cir. 2007) (citing Anderson, 477 U.S. at 247-48 (a factual allegation without evidentiary support cannot create a genuine factual dispute)).

### A. Plaintiff's Employment

Plaintiff was born in Russia in 1981. Her family moved to the Ukraine when Plaintiff was four years old, and she emigrated to the United States in 2000. Plaintiff graduated from St. Joseph's University in 2006. Having applied for a job at Duff & Phelps, she was interviewed in June 2006 by Vice President John Corbett and Senior Analyst Paul Sipala. *(Doc. No. 34, Ex. A, Anthony Dep. 128.)* On September 11, 2006, Plaintiff began working as an analyst in the Philadelphia Real Estate subunit of Defendant's Valuation Advisory Services Business group. *(Anthony Dep. 135-137.)* Plaintiff's responsibilities included organizing data from public and private records for use in creating commercial real estate appraisals. *(Anthony Dep. 153:2-4.)* Plaintiff's starting salary was $50,000, although she received a raise and discretionary bonus in 2007 and 2008. *(Anthony Dep. 136:1-4, 143:23-24, 144:1-3.)* Plaintiff's immediate supervisor was Sipala who, in turn, was supervised by Corbett. *(Doc. No. 32, at 1.)* In March 2008, Jay White became Managing Director of Plaintiff's subunit. There were eight employees in the subunit; in addition to Plaintiff, one – Edli Zaloom – was foreign born. *(Anthony Dep. 34:7-8, 152:22-24.)*

In early 2008, the Company evaluated Plaintiff's 2007 performance. *(Doc. No. 34, Ex. B.)* Although Plaintiff received the highest rating in two of ten "Competency Assessment" areas, she received the second lowest rating – "proficient" – in seven areas, and an overall competency rating of "proficient." *(Doc. No. 34, Ex. B.)* Sipala, who conducted the evaluation, characterized Plaintiff's overall performance as neither positive nor negative, but "fair." *(Doc. No. 34, Ex. B, Sipala Dep. 22:16.)* Plaintiff testified that Sipala was a "reasonable supervisor" without anti-Russian bias. *(Anthony Dep. 22:9-11, 225:18-22.)*

The only other real estate analyst then working in the Philadelphia office was Robert Wasenius, who was born in the United States and began working at Duff & Phelps after graduating from college in June 2007. *(Doc. No. 34, Ex. C, Wasenius Dep. 8.)* Wasenius' 2007 performance evaluation was similar to Plaintiff's, except that his overall competency was rated as "requires development" — the lowest possible rating. *(Doc. No. 34, Ex. B.)* Sipala, who also evaluated Wasenius, testified without contradiction that Wasenius' overall rating was not based on his competence, which was adequate, but "strictly on the formality that he had less than a year's experience, so at that point you would [necessarily] define someone as requiring development." *(Sipala Dep. 93:3-8.)* Thus, Plaintiff's 2006 evaluation – completed when she had worked at the Company for less than a year – included the same overall competency rating: "requires development." (*Plaintiff's Tr. Exhibits, at No. 4.*)

In July 2008 – shortly after her college graduation – Carly Kurkiewicz, who was born in the United States, began working at Duff & Phelps as a real estate analyst. Kurkiewicz had interned at Duff & Phelps in the summer of 2007, and accepted the Company's full time employment offer in November 2007 while a senior in college. *(Doc. No. 40, Ex. C.)* At the time the Company hired Kurkiewicz, "there was still the view that the need [for more

employees] would be there" when she actually began her employment some nine months later. *(Sipala Dep. 87:15-17.)* In the Spring of 2008, however, "as a result of the general economic downturn beginning in late 2007," Duff & Phelps "implemented Project Pearl, a nationwide reduction-in-force." *(Doc. No. 32, Ex. A, Certification of Ross Prindle.)* Because "Duff & Phelps relies heavily upon college recruiting, the Company decided during the current economic downturn to have a policy of not rescinding offers to impending college graduates in connection with layoffs, including Project Pearl, to avoid creating any potential disadvantage in competing for top college talent." *(Doc. No. 40, Ex. E, Prindle Affidavit.)*

**B.  Plaintiff's Firing**

Ross Prindle – a Chicago-based Managing Director and national head of the Company's Real Estate subunit – was among those executives who implemented Project Pearl. Fellow Managing Director Paul Barnes advised Prindle that "due to the Philadelphia office's relatively weak performance, [he] would be required to select [a real estate] Analyst-level employee there for termination." *(Doc. No. 32, Ex. A.)* Mr. Prindle did not know either Plaintiff or Wasenius (the only two real estate analysts working in Philadelphia at the time), nor did Prindle know their national origins. *(Id.)*

In deciding whom to terminate, Prindle relied primarily on "utilization data," by which the Company analyzed its employees' efficiency and productivity. *(Id.)* The data showed that "between January 1, 2007 and March 31, 2008, Plaintiff's overall utilization score was 10-15% lower per year than Wasenius' score." *(Id.)* Prindle then contacted Corbett to discuss the 2007 performance reviews of employees in the Philadelphia office. *(Doc. No. 34, Ex. D, Corbett Dep. 64-65.)* Corbett did not know that this conversation was related to layoffs, believing that Prindle had contacted him simply to discuss the employees' annual performance reviews.

(*Corbett Dep. 65:7-13; Doc. No. 32, ¶¶ 45-47.*) No mention was made of Plaintiff's nationality during the conversation. (*See Corbett Dep. 63-68; Doc. No. 32, Ex. A.*) Prindle contacted neither Sipala nor White. (*Sipala Dep. 23-24; Doc. No. 34, Ex. E, White Dep. 17-19.*)

Concluding that there was no "reason to believe Plaintiff's and Wasenius' utilization scores grossly mischaracterized the overall quality of their respective work performance," Prindle alone decided to terminate Plaintiff. (*Doc. No. 32, Ex. A.*) He stated without contradiction that Plaintiff's national origin (of which he was ignorant) played no part in his decision. (*Id.*) Plaintiff was one of 30 employees "nationwide across multiple business units . . . laid off as part of Project Pearl." (*Doc. No. 32, Ex. B.*)

On June 9, 2008, members of the Human Resources Department told Plaintiff that she would be laid off effective in one week. (*Anthony Dep. 226.*) Plaintiff's termination surprised Corbett and Sipala, who were unaware of any plans to terminate employees. (*Corbett Dep. 62:10-24, 65:7-9, 70:7-9; Sipala Dep. 23-24, 80-83.*) Indeed, Sipala, Corbett, and White were not involved in the decision to terminate Plaintiff, did not know of Project Pearl, and did not know who had made the final decision to end Plaintiff's employment. (*Corbett Dep. 62:10-14, 69:3-5; Sipala Dep. 23-24, 80-83; White Dep. 17:12-19.*)

### C. Procedural History

On July 25, 2008, Plaintiff filed an EEOC complaint, alleging that Defendant discriminated against her because of her Russian national origin. (*Doc. No. 1.*) On June 1, 2009, Plaintiff received a right to sue letter from the EEOC. On August 28, 2009, Plaintiff filed the instant Complaint. 42 U.S.C. §§ 2000(e) *et seq*; 42 Pa. Stat. §§ 951-963. On June 11, 2010, Defendant filed a Motion for Summary Judgment. (*Doc. No. 32.*) Plaintiff filed a Response on July 1st and Defendant filed a Reply on July 15th. (*Doc. Nos. 34, 40.*)

## IV.  STANDARDS GOVERNING PLAINTIFF'S CLAIMS

### A.  Plaintiff's Allegations

Plaintiff testified that because of her national origin, she was "given engagements that had very little billable hours" and no international travel, was "never accepted within the department," and was excluded from co-worker lunches, bowling outings, and other social activities.  *(Anthony Dep. 31:19-21, 32:23-24, 33:1-10.)*  Plaintiff also testified that during a departmental lunch, one of her non-supervisory co-workers, Kevin O'Donnell, "joked" that "Italians and Russians like to party."  *(Id. at 112:3-10.)*  Plaintiff does not allege, however, that any of her supervisors (Corbett, Sipala, or White) ever made any anti-Russian remarks.  Rather, Plaintiff "assume[s]" that Corbett determined she was Russian because of her accent, and so did not treat her fairly, and that Jay White "appeared not to like the fact that [Plaintiff] had a foreign background" because he would ask her to "repeat words over and over again" and "would also get annoyed every time the Plaintiff would stop by his office."  *(Doc. No. 34, at 8; Anthony Dep. 148, 149:16.)*

### B.  Title VII Standards

It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Because the PHRA and Title VII "share the same framework of evaluation," my analysis of Plaintiff's federal claim necessarily applies to her state claim.  Mathews v. Hermann, 2008 U.S. Dist. LEXIS 35726, *11 (E.D. Pa. 2008); see Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("Pennsylvania courts have construed the protection of [Title VII and the PHRA] interchangeably.").

To make out a *prima facie* case of national origin discrimination, a Title VII plaintiff

must show that:

> (1) she is a member of a protected class;
> (2) she was qualified for the position she held or sought;
> (3) she suffered an adverse employment action; and
> (4) similarly situated persons who are not members of the protected class were
> treated more favorably, or that the circumstances of her termination give rise to
> an inference of discrimination.

Taylor v. Brandywine Sch. Dist., 202 Fed. Appx. 570, 575 (3d Cir. 2006); See Jones v. School

Dist., 198 F.3d 403, 411 (3d Cir. 1999) (in Title VII cases, the "familiar burden-shifting

framework the Supreme Court articulated in [*McDonnell Douglas*]" applies); see also

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Once an employee establishes a *prima facie* case of discrimination, the employer must

articulate some permissible reason for the adverse employment action. See Krouse v. Am.

Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). The employer's burden at this stage is

> relatively light: it is satisfied if the [employer] articulates any legitimate reason
> for the [adverse employment action]; the [employer] need not prove that the
> articulated reason actually motivated the [action].

Id. (quoting Woodson v. Scott Paper, 109 F.3d 913, 920 n.2 (3d Cir. 1997)). If the employer

satisfies this burden, the employee must establish by a preponderance of the evidence that the

employer's purportedly legitimate reason was pretextual. Id.


## V. DISCUSSION

### A. Plaintiff Cannot Make Out a *Prima Facie* Case of Discrimination

Defendant concedes that Plaintiff is a protected class member, was qualified for her

position, and suffered an adverse employment action. Defendant vigorously denies, however,

that Plaintiff was discharged because of her Russian national origin.

The Third Circuit has "repeatedly emphasized that the requirements of the *prima facie* case are flexible and must be evaluated in light of the circumstances of the case before the court. This applies with particular force to the fourth element of the prima facie case of discrimination." Kuzdrowski v. Nicholson, 314 Fed. Appx. 410, 413 (3d Cir. 2008) (internal citations and quotation marks omitted).

Even when viewed in the light most favorable to Plaintiff, the circumstances of her termination do not give rise to an inference of discrimination. First, Plaintiff offers little more than scattered and very general claims of disparate treatment. Typical is Plaintiff's deposition testimony that "[e]veryone" in her department "besides Paul Sipala [her supervisor] and Edli Zaloom" harbored anti-Russian bias. *(Anthony Dep. 169:18-19.)* Yet, when asked if she knew of "any facts to support that belief," Plaintiff testified, "I don't have any facts." *(Anthony Dep. 169:22.)*

Plaintiff has not offered an actual instance where Corbett or White expressed anti-Russian sentiment or treated her less favorably than Wasenius or other employees. She believes she was denied more lucrative engagements in favor of native born co-workers and instead given "engagements that had very little billable hours" and no "international travel." *(Anthony Dep. 31:19-24, 32:20-21.)* She could not, however, identify a single engagement she unsuccessfully sought or was refused in favor of Wasenius – the only "similarly situated" person in the subunit. *(Anthony Dep. 174:10, 179:10-17)("I can't think of a particular one, no.")*

Although Plaintiff testified she was given "menial tasks," the only such task she could remember was "making copies of documents." *(Anthony Dep. 163:3, 164:13-14.)* Remarkably, no supervisor assigned this task. Rather, Plaintiff made copies at the request of co-worker Zaloom:

> Q: And so Mr. Zaloom, who is your coworker as an analyst, is asking you to help him get his work done and your contention is that Mr. Zaloom's request of you to help him make copies is somehow discriminatory against you because you're Russian?
> [Plaintiff] A: Yes
> Q: What fact do you rely upon for that allegation?
> [Plaintiff] A: I'm entitled to my opinions.
> Q: It's just an opinion, right?
>         ***
> [Plaintiff] A: Yes.
> Q: You don't have any facts, right?
> [Plaintiff] A: No.
> Q: Correct?
> [Plaintiff] A: Correct.

*(Anthony Dep. 167:3-20.)*

Plaintiff also believed that other non-supervisory co-workers had displayed anti-Russian bias when they asked her to take over an unfinished engagement on which their work had been inadequate. When asked for supporting facts she acknowledged, "I don't have any facts. That's my opinion." *(Anthony Dep. 169:12-13.)*

Plaintiff's "unsupported assertions, speculation, and conclusory allegations are insufficient to withstand a motion for summary judgment." Nelson v. DeVry, Inc., 2009 U.S. Dist. LEXIS 38161, *27-28 (E.D. Pa. 2009); see King v. School Dist. of Philadelphia, 2001 U.S. Dist. LEXIS 10710, *14 (E.D. Pa. 2001) ("Plaintiff's conclusory and unsupported beliefs are insufficient to create a genuine issue of material fact as to Defendants' motivation or support an inference of discrimination . . . . Plaintiff therefore cannot establish a *prima facie* case of discrimination under Title VII or the PHRA, and Defendants are entitled to summary judgment on those claims.").

Moreover, essential to her *prima facie* case is evidence that the person who decided to fire Plaintiff knew of her membership in a protected class. As the Third Circuit explained,

> [w]e cannot presume that an employer most likely practiced unlawful
> discrimination when it does not know that the plaintiff even belongs to the
> protected class. The employer's knowledge, in this class of cases, is a critical
> element of the plaintiff's *prima facie* case. Indeed, it is counterintuitive to infer
> that the employer discriminated on the basis of a condition of which it is wholly
> ignorant . . . .

Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996) (affirming summary judgment in

Title VII pregnancy discrimination case where employer did not know employee was pregnant).

Defendants have offered uncontradicted evidence that Ross Prindle alone decided to fire

Plaintiff, that he had never met Plaintiff, that he accepted the accuracy of Plaintiff's and

Wasenius' utilization scores, that he knew nothing of either Plaintiff's or Wasenius' national

origin, and that Plaintiff's national origin had nothing to do with his decision. *(Doc. No. 32, Ex.*

*A.)* Indeed, Plaintiff did not even depose Prindle. Further, although Prindle discussed Plaintiff's

performance reviews with Corbett, there is no evidence – and Plaintiff does not even suggest –

that any of Plaintiff's supervisors (Corbett, Sipala, or White) or any other Duff & Phelps

employee, influenced Prindle's decision based upon an anti-Russian bias.

In these circumstances, Plaintiff's complaints about her co-workers – the inappropriate

"joke"; the refusal to invite her to social events – have nothing to do with her termination.

Prindle alone decided to fire Plaintiff based on her utilization score and did not even speak to her

co-workers. See Sarullo v. United States Postal Serv., 352 F.3d 789, 799 (3d Cir. 2003)

(plaintiff unable to establish *prima facie* case of discrimination because "[w]hile [the plaintiff]

alleges that his supervisors and coworkers knew of his Native American ancestry, those

individuals were not involved in the decision to deny reinstatement . . . [and the plaintiff] has

provided no evidence to rebut [the defendant's] affidavit stating that when he denied [the

plaintiff's] reinstatement he was unaware of [his] 'race, color, national origin, age, or prior

EEOC activity' or that [individuals] had made allegations of name calling and improper language in the workplace.").

Plaintiff nonetheless argues that her "replacement" by Kurkiewicz in and of itself creates an inference of discrimination. I disagree. Although evidence that a terminated employee "was replaced by someone outside of the protected class [can] establish[] an inference of discrimination," the "elements of [a] *prima facie* case must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." Johnson v. Keebler-Sunshine Biscuits, Inc., 2007 U.S. App. LEXIS 1914, *6 (3d. Cir. January 3, 2007); Geraci, 82 F.3d at 581. Here, Kurkiewicz did not *replace* Plaintiff. Rather the Company hired Kurkiewicz in November 2007 – some nine months *before* the initiation of Project Pearl and Plaintiff's firing. Kurkiewicz was thus hired to work with Plaintiff, not to replace her. Indeed, Sipala testified without contradiction that the real estate subunit has not hired anyone since Plaintiff was fired. *(Sipala Dep. 88: 3-5.)* Moreover, Plaintiff does not suggest that when Prindle evaluated Plaintiff and Wasenius with an eye to firing one of them, he even knew that Kurkiewicz was scheduled to begin employment as an analyst a month later.

In sum, the evidence does not establish a "causal nexus between h[er] membership in a protected class and the decision" to terminate her. Sarullo, 352 F.3d at 798. On the contrary, the uncontradicted evidence shows that Ross Prindle fired Plaintiff for reasons wholly unrelated to where she was born. In these circumstances, Plaintiff has failed to make out a *prima facie* case of discrimination.

**B. Plaintiff Cannot Establish Pretext**

Assuming, *arguendo*, that Plaintiff could make out a *prima facie* case, Defendant has provided a legitimate, non-discriminatory reason for her termination: that economic conditions

compelled Duff & Phelps to fire Plaintiff and twenty-nine other employees. To defeat summary judgment, Plaintiff must show that this reason is pretextual. See Moore, 461 F.3d at 340-342. Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). This is a "difficult burden on the plaintiff." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (internal quotation marks omitted).

Plaintiff argues that "Defendant's purported economic excuse for firing [her] is not worthy of credence" because: 1) "Defendant hired a new analyst" shortly after Plaintiff's termination; and 2) Plaintiff's supervisors (Sipala, Corbett, and White) were unaware that layoffs were to occur. *(Doc. No. 34, at 12-13.)*

As I have described, the Company hired Kurkiewicz some nine months *before* the initiation of Project Peal and Plaintiff's firing. Plaintiff, who did not take Prindle's deposition, has provided no evidence to show that he even knew that Kurkiewicz would begin full time employment in July 2008. Nor has Plaintiff offered any evidence to contradict the Company's stated policy that to protect future college recruiting, it would not renege after a new college graduate (like Kurkiewicz ) had accepted a job offer. Moreover, Plaintiff has offered no evidence to contradict Sipala's testimony that the Company "would not and h[as] not extended offers to anyone within Philadelphia real estate since [Plaintiff] has been let go." *(Sipala Dep. 88:3-5.)*

When asked at her deposition if she had any reason to dispute that thirty Company employees were fired pursuant to Project Pearl, Plaintiff responded, "Not at this time, no."

*(Anthony Dep. 194:11.)* Plaintiff now suggests, however, that Project Pearl is a fiction because Sipala*, Corbett, and White did not know about it. That these men were ignorant of a cost-saving program that might have resulted in their own firing is not surprising. In any event, their ignorance of Project Pearl hardly contradicts Defendant's testimony and documents (some of which are labeled "Project Pearl Severance Detail") confirming the Project's existence and the resulting termination of thirty positions nationwide. *(Doc. No. 32, Ex. A.)* Rather, to make out pretext, Plaintiff

> must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence

Jones, 198 F.3d at 413 (*citing* Keller, 130 F.3d at 1108). Plaintiff has not met this burden. Accordingly, I conclude in the alternative that Plaintiff has not shown by a preponderance of the evidence – or *any* evidence – that the reason for her termination was pretextual  See Robinson v. Matthews Int'l Corp., 2010 WL 763869, *3-5 (3d. Cir. Mar. 8, 2010) (defendant's decision "was a reasonable one, and [courts] may not second guess [a company's] business decision"); see also Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].")

### C.    Plaintiff's Mixed-Motive Claims

Finally, Plaintiff argues in the alternative that her claims survive under a "mixed motive" analysis. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003). The Third Circuit has held that "[a] Title VII plaintiff may state a claim for discrimination under either the pretext theory . . . or [a] mixed-motive theory . . . under which a plaintiff may show that an employment

decision was made based on both legitimate and illegitimate reasons." Makky v. Chertoff, 541

F.3d 205, 213 (3d Cir. 2008) (internal quotation marks and citations omitted). Under a "mixed

motive" theory, the plaintiff may establish an unlawful employment action by demonstrating

"that race, color, religion, sex, or national origin was a *motivating* factor for the [action], even

though other factors also motivated the [action]." 42 U.S.C. § 2000e-2(m) (emphasis added). If

the plaintiff thus establishes an unlawful action, the defendant has "a limited affirmative defense

that does not absolve it of liability, but restricts the remedies available to [the] plaintiff. . . . In

order to avail itself of the affirmative defense, the [defendant] must demonstrate that [it] would

have taken the same action in the absence of the impermissible motivating factor." Desert

Palace, 539 U.S. at 95 (internal quotation marks and citations omitted).

The Third Circuit has suggested that the "mixed motive" analysis "is normally used in

instructing juries" and may not be available at summary judgment. Rouse v. II-VI, Inc., 2009

U.S. App. LEXIS 10506, *12 (3d Cir. May 14. 2009). Assuming *arguendo* that a "mixed

motive" analysis applies here, Plaintiff would have to show "by a preponderance of the evidence,

sufficient evidence for a reasonable jury to conclude that [national-origin] was a motivating

(rather than a determinative) factor in the decision to terminate h[er] employment." Id. (citing

Desert Palace, 539 U.S. at 101.)

Unfortunately for Plaintiff, "where the first prong of the McDonnell-Douglas analysis

demonstrates that the plaintiff has failed to provide evidence of discrimination through

circumstantial evidence, and where the plaintiff provides no direct evidence of discrimination,

there is no basis to allow the plaintiff to proceed on a mixed motive theory." Sulit v. Federal

Reserve Bank of Philadelphia, 2009 U.S. Dist. LEXIS 77699, *21-22 (E.D. Pa. Aug. 28, 2009).

As I have described, Plaintiff offers neither direct nor circumstantial evidence suggesting that

national origin was a motivating factor or, indeed, any factor in Prindle's decision to fire her.

See Cange v. Phila. Parking Auth., 2010 U.S. Dist. LEXIS 31929, *6-7 (E.D. Pa. Apr. 1, 2010)

("In order for a plaintiff's national origin to have been a motivating factor in the defendant's

decision to terminate her, it logically follows that the defendant must know the plaintiff's

national origin.").  Once again, Plaintiff's "reliance on unsupported assertions, speculation, and

conclusory allegations [is] insufficient to withstand a motion for summary judgment."  Nelson v.

DeVry, Inc., 2009 U.S. Dist. LEXIS 38161, *27-28 (E.D. Pa. 2009).


**VI.    CONCLUSION**

Because Plaintiff's Title VII claim fails, her PHRA claim also fails.  See Corbett v.

Sealy, Inc., 135 Fed. Appx. 506, 510 (3d Cir. 2005).  Accordingly, I will grant Defendant's

Motion for Summary Judgment.

An appropriate Order follows.


**BY THE COURT**.

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.